## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Michael Benson,
*and others similarly situated*,[1]

      Plaintiff,

v.

Jodi Harpstead,
*Commissioner of the Department of Human
Services, Sued in Official Capacity*,

      Defendant.

Case No. 22-cv-1601 (ECT/TNL)

---

Michael Benson,

      Petitioner,

v.

Commissioner Jodi Harpstead,

      Respondent.

Case No. 22-cv-2017 (ECT/TNL)

---

Michael Benson, 1111 Highway 73, Moose Lake, MN 55767, pro se.

Aaron Winter, Assistant Attorney General, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101, for Commissioner Jodi Harpstead.

---

[1] As the Court previously stated:

> Benson purports in his pleading to bring this action on behalf of both himself and on behalf of similarly situated clients of the Minnesota Sex Offender Program ("MSOP"). Benson is warned at the outset of this proceeding that, as a pro se litigant, he will not be permitted to represent the interests of parties other than himself in this action. *See* 28 U.S.C. § 1654.

Order at 1 n.1, ECF No. 4 in No. 22-cv-1601.

1

---

## REPORT & RECOMMENDATION

---

## I. INTRODUCTION

Collectively, these matters comes before the Court on pro se litigant Michael Benson's "alleg[ations] that the State of Minnesota has failed to provide adequate procedural opportunity for [civilly committed persons] such as himself to assert that they should no longer be civilly detained." Order at 1, ECF No. 11 in No. 22-cv-1601.[2] "Unclear as to whether he should seek relief pursuant to 42 U.S.C. § 1983 or through a petition for a writ of habeas corpus (or both), Benson has filed one of each action, raising substantially the same claim for relief in each." Order at 1-2, ECF No. 11 in No. 22-cv-1601.

## II. BACKGROUND

It is undisputed that Benson has been indeterminately committed to MSOP for approximately three decades. *See, e.g.*, Mem. in Supp. of Pet. at 1, ECF No. 3 in No. 22-cv-2017; Mem. in Supp. of Resp. at 2, ECF No. 8 in No. 22-cv-2017; *see also generally In re Benson*, No. C0-93-1357, 1993 WL 459840 (Minn. Ct. App. Nov. 9, 1993).

### A. Reduction-in-Custody Process

Under Minnesota law,

> [a] person who is committed as a sexually dangerous person or a person with a sexual psychopathic personality shall not be discharged until it appears to the satisfaction of the

---

[2] *See generally* ECF No. 5 in No. 22-cv-2017. For documents that have been filed in both matters, the Court will endeavor to cite to the document in No. 22-cv-1601, the first-filed case, with a tandem cite in a footnote, referencing the same document in No. 22-cv-2017, the second-filed case.

[Commitment Appeal Panel[3]], after a hearing and recommendation by a majority of the special review board, that the committed person is capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of treatment and supervision.

Minn. Stat. § 253D.31.

An individual like Benson who has been civilly committed to MSOP may seek a discharge by filing a petition with a statutorily established body known as the Special Review Board. Minn. Stat. § 253D.27, subd. 2; Mem. in Supp. of Resp. at 3. The Special Review Board holds a hearing on the petition and then issues a report with written findings of fact and a recommendation as to whether the petition should be approved or denied. Minn. Stat. § 253D.27, subds. 3(a), 4; Mem. in Supp. of Resp. at 3; *see, e.g.*, Findings of Fact & Recommendation of the Special Review Board [hereinafter "SRB Report"], ECF No. 3 at 8-16 in No. 22-cv-2017. This report is forwarded to the Commitment Appeal Panel. Minn. Stat. § 253D.27, subd. 4.

"If no party petitions the [Commitment Appeal Panel] for a rehearing or reconsideration within 30 days, the [Commitment Appeal Panel] shall either issue an order adopting the recommendations of the [S]pecial [R]eview [B]oard or set the matter on for a hearing." Minn. Stat. § 253D.28, subd. 1(c).

A party may seek "rehearing and reconsideration" of the Special Review Board's recommendation by petitioning the Commitment Appeal Panel. *Id.*, subd. 1(a); Mem. in Supp. of Resp. at 3. "The petition must be filed with the supreme court within 30 days

---

[3] As Commissioner Harpstead points out, the statutory term for this panel is the "judicial appeal panel." Mem. in Supp. of Resp. at 3 n.2.; *see, e.g.*, Minn. Stat. §§ 253D.27, subd. 4; 253D.28, 253D.31; *see also In re Civil Commitment of Benson*, No. A22-1840, 2023 WL 3807476, at *1 n.1 (Minn. Ct. App. June 5, 2023) (noting prior names).

after the recommendation is mailed . . . ." Minn. Stat. § 253D.28, subd. 1(b). "The supreme court . . . [then] refer[s the] petition for rehearing and reconsideration to the chief judge of the [Commitment Appeal Panel]." *Id.*, subd. 2(a). The Commitment Appeal Panel then sets "the time and place of the hearing on the petition." *Id.* "The hearing must be held within 180 days of the filing of the petition unless an extension is granted for good cause." *Id.*, subd. 1(b).

The Commitment Appeal Panel then "consider[s] the petition de novo" and "rule[s] upon the petition." *Id.*, subd. 3. An order of the Commitment Appeal Panel may be appealed to the Minnesota Court of Appeals. *Id.*, subd. 4; Minn. Stat. § 253B.19, subd. 5.

### B. 2021 Findings of Fact & Recommendation of the Special Review Board

In April 2020,[4] Benson petitioned for a reduction in custody under Minn. Stat. § 253D.27. Compl. ¶ 10; *see also* Ex. A to Decl. of Aaron Winter, ECF No. 9-1 at 36 in No. 22-cv-2017. The Special Review Board held a hearing on Benson's petition on March 23, 2021. Compl. ¶ 10; SRB Report at 1.

On April 3, 2021, the Special Review Board issued its report under Minn. Stat. § 253D.27, subd. 4, for the Commitment Appeal Panel. Compl. ¶ 10; *see generally* SRB Report. The Special Review Board recommended that Benson's petition be denied. SRB Report at 1, 9.

---

[4] In the Complaint filed in No. 22-cv-1601, Benson alleges that he petitioned for a reduction in custody on April 21, 2020. Compl. ¶ 10, ECF No. 1 in No. 22-cv-1601. The Court takes this as true for present purposes. *See, e.g.*, *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (assuming truth of the complaint's factual allegations for a motion brought under Fed. R. Civ. P. 12(b)(6)).

### C. 2021 Petition for Rehearing & Reconsideration

Approximately one week later, in mid-April 2021, Benson petitioned for rehearing and reconsideration by the Commitment Appeal Panel under Minn. Stat. § 253D.28. Compl. ¶ 12; Mem. in Supp. of Pet. at 2; Ex. B to Winter Decl., ECF No. 9-1 at 42 in No. 22-cv-2017; *see also Benson v. Johnston*, No. A21-1111, 2022 WL 1004845, at *1 (Minn. Ct. App. Apr. 4, 2022), *rev. denied* (Minn. June 21, 2022).  Under the 180-day timeline of Minn. Stat. § 253D.28, subd. 1(b), the Commitment Appeal Panel is required to hold a hearing on Benson's petition within 180 days unless an extension is granted, thus requiring the hearing to be held sometime in approximately mid-October 2021.  At the time Benson filed these actions in June and August 2022, Benson had not yet had a hearing before the Commitment Appeal Panel or been given notice as to when such a hearing would take place.  Compl. ¶ 12; Mem. in Supp. of Pet. at 2.

### D. State Habeas Proceedings

In the meantime, approximately one week after he petitioned for rehearing and reconsideration by the Commitment Appeal Panel, Benson filed a petition for a writ of habeas corpus in state district court.  *Benson*, 2022 WL 1004845, at *1; *see* Pet. at 2, ECF No. 1 in No. 22-cv-2017; Decl. of Aaron Winter ¶¶ 2-4, ECF No. 9 in No. 22-cv-2017; *see generally* Exs. A-C to Winter Decl., ECF No. 9-1 in No. 22-cv-2017; *see also generally Benson v. Johnston*, No. 09-CV-21-816 (Minn. Dist. Ct.) (Apr. 21, 2021) (Index #2).[5]  Among other things, Benson asserted that the reduction-in-custody process

---

[5] The Court may take judicial notice of public records.  *Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005).

took an unconstitutionally long time. Mem. in Supp. of Resp. at 8; Pet. at 2; *see, e.g.*, Ex. A to Winter Decl., ECF No. 9-1 at 19-20, 31-32, 36 in No. 22-cv-2017; Ex. C to Winter Decl., ECF No. 9-1 at 54 in No. 22-cv-2017.

The state district court denied the petition and Benson appealed to the Minnesota Court of Appeals. *See generally Benson*, 2022 WL 1004845; Ex. C to Winter Decl., ECF No. 9-1 at 50-54 in No. 22-cv-2017. Benson's petition for review by the Minnesota Supreme Court was subsequently denied. *Benson v. Johnston*, No. A21-1111 (Minn. June 21, 2022) (order).

### E. Federal Cases

#### 1. Section 1983 Civil Action, No. 22-cv-1601

Benson filed a complaint pursuant to 42 U.S.C. § 1983, asserting violations of his due process rights under the Fourteenth Amendment. Benson alleges that Commissioner Jodi Harpstead has violated his rights to "Substantive and Procedural Due Process by failing to create a sufficient number of Special Review Boards," thereby causing the reduction-in-custody process to become "unreasonably delayed." Compl. ¶¶ 8-9. Benson alleges that he "had to unreasonably wait 348 days" to appear before the Special Review Board after petitioning for a reduction in custody. Compl. ¶ 10 (emphasis omitted). Benson alleges that Minn. Stat. § 253B.22 "dictates that each patient 'shall have the [r]ight to appear at" a "proceeding which is held 'at least once every six months.'" Compl. ¶ 10 (quoting Minn. Stat. § 253B.22, subd. 2).[6] Benson alleges that,

---

[6] Under Minnesota law, the Commissioner of Human Services "shall establish a review board of three or more persons for . . . [MSOP] to review the admission and retention of patients of that program receiving services." Minn. Stat. § 253B.22, subd.1; *see* Minn. Stat. § 253B.02, subd. 3; *see also* Minn. Stat. § 253B.22, subd. 4 ("The

"by not creating enough [Special Review Board] panels," Commissioner Harpstead has "knowingly and deliberately frustrated [his] . . . Fourteenth Amendment Right to a [Special Review Board] hearing within a reasonable amount of time." Compl. ¶ 10. And because appearance before the Special Review Board is required to appear before the Commitment Appeal Panel, which determines whether an individual like Benson may be discharged, Benson alleges that Commissioner Harpstead's failure to create enough Special Review Board panels results in access to the Commitment Appeal Panel being "unreasonably delayed by several months (if not years)" and amounts to "a deliberate strategy that unreasonably frustrates the ability to appeal to the [Commitment Appeal Panel] within a *reasonable amount of time*." Compl. ¶ 11.

Similarly, Benson alleges that Commissioner Harpstead has violated his "Constitutional Right to Substantive and Procedural Due Process by failing to request the required number of [Commitment Appeal Panels] necessary to allow for timely review of [his] . . . continued confinement within *a reasonable amount of time*." Compl. ¶ 12. Benson alleges that, under Minn. Stat. § 253B.19, the Minnesota Supreme Court establishes the Commitment Appeal Panel, the compensation and expenses of which are born by the Department of Human Services. Compl. ¶ 12. Benson alleges that, as Commissioner Harpstead "is undeniably responsible for both the compensation and expense," she has "a ministerial duty . . . to request from the [Minnesota] Supreme Court the need for more [Commitment Appeal Panels] to comply with Minnesota law." Compl.

---

board shall review the admission and retention of patients at the program."). Minnesota law further provides that "the review board" shall visit at least once every six months" and, "[u]pon request each patient in the program shall have the right to appear before the review board during the visit." Minn. Stat. § 253B.22, subd. 2.

¶ 12; *see also* Compl. ¶ 12 ("refus[ing] to perform the mandated responsibility of requesting the [Minnesota] Supreme Court to create more [Commitment Appeal Panels]"). Pointing to the 180-day clock in Minn. Stat. § 253D.28, subd. 1(b), Benson alleges that he petitioned for rehearing and reconsideration before the Commitment Appeal Panel more than "429 days" ago and "has not received a file number, scheduling order, or [been] told when a hearing is to take place." Compl. ¶ 12.

Benson alleges that, at the end of May 2022, he received a letter from an attorney stating that the attorney had been appointed by the Commitment Appeal Panel "to assist [him]." Compl. ¶ 16. Benson was advised that the Commitment Appeal Panel had ordered that he be examined "within 60[] days and submitted within 90 days." Compl. ¶ 16. Benson was further advised that, after the report was submitted, "it would be 'about 2 months' before a scheduling conference will set a trial date and time." Compl. ¶ 16. Benson estimates that the hearing before the Commitment Appeal Panel will not take place until 2024.[7] In support of his allegations, Benson alleges that the process on a prior petition for a reduction in custody took "1,076 days to complete" between the initial

---

[7] In what the Court has construed as Benson's reply in the habeas case, Benson states that, "[o]n 30 September 2022[, he] was informed he had a hearing at the [Commitment Appeal Panel] scheduled for 14 November 2022." Obj. to Resp. at 5, ECF No. 11 in 22-cv-2017. In a subsequent letter, Benson confirmed that the hearing was held on November 14. Ltr. at 1, ECF No. 12 in No. 22-cv-2017. This is consistent with the publicly available notice of appeal filed by Benson with the Minnesota Court of Appeals challenging the December 14, 2022 decision of Commitment Appeal Panel. *In re Civil Commitment of Benson*, A22-1840 (Minn. Ct. App.) (Dec. 27, 2022) (notice of appeal). The Minnesota Court of Appeals recently affirmed the Commitment Appeal Panel's decision granting Commissioner Harpstead's "motion to dismiss [Benson's] petition for a reduction in custody, denying [Benson] all requested relief, and ordering [Benson's] petition withdrawn." *In re Civil Commitment of Benson*, 2023 WL 3807476, at *1.

　　To the extent Benson's letter can be read as trying to amend his petition to add new due process claims related to the November 14 hearing, the Court has not considered them. The Court appreciates that Benson is proceeding pro se. At the same time, as this Court has previously observed in connection with an earlier action brought by Benson, "[t]he sophisticated and strategic claims and responses, the number and substance of docket entries in cases involving [Benson], and his demonstrated ability to file pleadings that require complex analysis to address help establish that [Benson] is at the highest levels of knowledge and proficiency in the context of pro se litigants." *Benson v. Fischer*, No. 16-cv-509 (DWF/TNL), 2019 WL 334373, at *2 (D. Minn. Jan. 25, 2019).

petition for a reduction in custody and the decision of the Commitment Appeal Panel. Compl. ¶ 13.

Benson also points to the delays other civilly committed individuals have experienced when petitioning for a reduction in custody. Benson alleges that, for one individual, 394 days passed between the petition for a reduction in custody and the report of the Special Review Board. Compl. ¶ 14. On a petition for rehearing and reconsideration, the Commitment Appeal Panel "ordered a subsequent examination," but no hearing had been conducted as of "698 days" later, "demonstrating a process that has taken . . . [at least] 1,092 days." Compl. ¶ 14. Benson alleges that, for a second individual, 461 days passed between the petition for a reduction in custody and the report of the Special Review Board. Compl. ¶ 14. As of 191 days after the second individual petitioned for rehearing and reconsideration by the Commitment Appeal Panel, the second individual "still ha[d] no file number, scheduling order, or determined date for a hearing." Compl. ¶ 14. For a third individual, Benson alleges that 470 days passed between the petition for a reduction in custody and the report of the Special Review Board. Compl. ¶ 14. As of 147 days after the third individual petitioned for rehearing and reconsideration by the Commitment Appeal Panel, there was "no scheduling order or determined date for a hearing." Compl. ¶ 14.

The Complaint repeatedly alleges violations of both procedural and substantive due process. *See, e.g.*, Compl. ¶¶ 2, 3, 9, 11-16, 18. As best as this Court is able to tell, in his opposition to the Commissioner's motion to dismiss, Benson appears to have

limited his claims to those alleging violations of procedural due process.[8]  *See, e.g.*, Pl.'s Obj. to Mot. to Dismiss at 2 (Complaint "specifically addresses how [Commissioner Harpstead] has failed to provide the hearings within the mandated prescribed times of the statutes provided, a Procedural Due Process claim unrelated to *Karsjens*"), 4 (describing "Specific Procedural Due Process Claim"), 5 ("Plaintiff's Procedural theory arises out of the *reduction in custody process* hearing not occurring as prescribed (future tense)"), 7 (distinguishing between "*Karsjens'* Substantive and Plaintiff's Procedural theories" and asserting Commissioner Harpstead has violated Benson's right to procedural due process by not having hearings before the Special Review Board and Commitment Appeal Panel "within the prescribed times"), ECF No. 20 in No. 22-cv-1601.   Like Commissioner Harpstead, the Court interprets Benson's opposition as "clarif[ying] that the Complaint does not bring a substantive due process claim," only procedural due process claims. Reply at 1, ECF No. 21 in No. 22-cv-1601.

## 2.  Section 2254[9] Habeas Petition, No. 22-cv-2017

Benson then filed a petition for a writ of habeas corpus, seeking federal habeas relief on two grounds.  *See generally* Pet.

---

[8] *See supra* n.7.

[9] Benson states that his petition is brought pursuant to 28 U.S.C. § 2241.  Pet. at 1.  Benson's confinement, however, is pursuant to a state-court judgment.  *See Doranti v. Harpstead*, No. 20-cv-0549 (PJS/DTS), 2020 WL 3618576, at *1 (D. Minn. July 2, 2020) ("Doranti was civilly committed as a psychopathic personality in 1992.  Although Doranti purports to bring his present habeas application under 28 U.S.C. § 2241, Doranti is civilly committed pursuant to a state-court order." (footnote and citation omitted)).  Accordingly, as Commissioner Harpstead points out, 28 U.S.C. § 2254, rather than § 2241, governs.  *Crouch v. Norris*, 251 F.3d 720, 723 (8th Cir. 2001) ("Not only is § 2254 an appropriate vehicle for Crouch's proposed claims, it is, as a practical matter, the only vehicle. This is because Crouch is a 'person in custody pursuant to the judgment of a State court,' 28 U.S.C. § 2254(a), and can only obtain habeas relief through § 2254, no matter how his pleadings are styled."); *see also, e.g., Coppage v. Redman*, 429 F. App'x 626, 626 (8th Cir. 2011) (per curiam); *Abordo v. O'Dell*, 23 F. App'x 615, 616 (8th Cir. 2001); *Doranti*, 2020 WL 3618576, at *1.  In light of Benson's pro se status, the Court has construed his petition under § 2254.

First, Benson claims that his rights to procedural and substantive due process under the Fourteenth Amendment have been violated "[d]ue to the inordinate length of time it takes to get a hearing" in connection with a petition for a reduction in custody. Pet. at 3-4. Benson states that hearings in connection with a petition for review are not being held "in a meaningful time and in a meaningful manner," and, after petitioning for a reduction in custody in April 2020, he is still waiting for the process to conclude.[10] Pet. at 4.

Second, Benson claims that "[i]n failing to provide a meaningful and timely Discharge Process[,] there is no 'exercised professional judgment' which supports the limits of [his] liberty." Pet. at 4. According to Benson, "[i]n failing to create the needed resources and properly train those consigned for the Discharge Process[,] [Commissioner Harpstead] has failed to provide 'reasonable care' that comports fully with the purpose of [his] continued commitment." Pet. at 4; *see also* Mem. in Supp. of Pet. at 6.

In the memorandum accompanying his petition, Benson recounts that he petitioned for a reduction in custody back in April 2020; it took approximately one year for the Special Review Board to issue its report; he immediately sought rehearing and reconsideration with the Commitment Appeal Panel; and, despite the 180-day clock in Minn. Stat. § 253D.28, subd. 1(b), he has still not had a hearing before the Commitment Appeal Panel.[11] Mem. in Supp. of Pet. at 2. Benson "asserts that the inordinate amount of time it takes to effectuate and conclude the Discharge Process from Minnesota's civil

---

[10] *But see supra* n.7.
[11] *But see supra* n.7.

commitment program is a direct attack on the parameters of procedural due process addressed in *Mathews v. Eldridge*," 424 U.S. 319 (1976).  Mem. in Supp. of Pet. at 4. Benson asserts that he has "not had a hearing within a *meaningful time and in a meaningful manner* wherein he can challenge the deprivation of his liberty."  Mem. in Supp. of Pet. at 4.[12]

### 3. Encouragement to Come to Understanding on Appropriate Procedural Vehicle

Following the filing of the second action, the Court issued an Order setting deadlines in these two cases and "encourag[ing] the parties, if possible, to come to an understanding regarding (1) which of the two actions is the more appropriate for Benson's claims to be litigated at this time and (2) whether the less appropriate case might be voluntarily dismissed without prejudice or stayed during the meantime."  Order at 2, ECF No. 11 in No. 22-cv-1601.  The parties were not able to reach an agreement.

### III. APPROPRIATE PROCEDURAL VEHICLE

The Court first turns to the appropriate procedural vehicle for Benson's claims that the process for petitioning for a reduction in custody is unconstitutionally long.

"[T]he essence of habeas corpus is an attack by a person in custody upon the

---

[12] *But see supra* n.7.

    Benson's memorandum accompanying his petition could arguably be read as expanding the second ground for relief.  Benson asserts that he "has objective testimony from the [Special Review Board] and the [Special Review Board] expert which could not diagnose a disorder [n]or could the [Special Review Board] definitively state if he [Benson] does or does not have a paraphilic disorder," and therefore he "does not presently have a mental abnormality that's reasonably related to his commitment or continued confinement."  Mem. in Supp. of Pet. at 6-7.

    In his reply, however, Benson states that his "claim(s) are essentially one claim," namely, that his "Due Process Right to a Reduction in Custody Process ('Discharge Process') hearing in a *meaningful time and in a meaningful manner* was and is being denied to the point of exhaustion."  Obj. to Resp. at 1; *see also supra* n.7. Benson further states that "[t]he second claim is dependent upon the first, in that by failing to provide the entitled hearing[, his] current detention is bereft of any 'exercised professional judgment,' a mandated constant under *Youngberg v. Romeo*, 457 U.S. 307 (1982)."  Obj. to Resp. at 1; *see also* Mem. in Supp. of Pet. at 6.

legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973); *see, e.g.*, *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam); *Otey v. Hopkins*, 5 F.3d 1125, 1130 (8th Cir. 1993). "[W]hen a state prisoner is challenging the very fact of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."[13] *Preiser*, 411 U.S. at 500. "If the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy." *Kruger*, 77 F.3d at 1073; *accord Spencer v. Haynes*, 774 F.3d 467, 470 (8th Cir. 2014). "It is the substance of the relief sought which counts." *Kruger*, 77 F.3d at 1073; *see Otey*, 5 F.3d at 1130. "Where [a] petitioner seeks a writ of habeas corpus and fails to attack the validity of his sentence or the length of his state custody, the district court lacks the power or subject matter jurisdiction to issue a writ." *Kruger*, 77 F.3d at 1073.

In essence, Benson's argument is that, because the reduction-in-custody process takes so long, it effectively extends the length of his civil commitment. Fundamentally, however, Benson's challenge is to the length of the *process*, not the length of his commitment. The substance of the relief sought by Benson is a faster process. *See Kruger*, 77 F.3d at 1074. While the Court can appreciate the logic behind Benson's

[13] While Benson is "confined pursuant to civil commitment proceedings, and not pursuant to a sentence imposed for a conviction in a criminal case," this principle "is fully applicable to state detainees who are confined by reason of a civil commitment order, rather than a prison sentence." *Suchan v. Jesson*, No. 13-cv-3117 (MJD/JJG), 2014 WL 102522, at *3 (D. Minn. Jan. 9, 2014) (citing cases); *see also Carter v. Bickhaus*, 142 F. App'x 937, 938 (8th Cir. 2005) (per curiam); *cf. Morgan v. Javois*, 744 F.3d 535, 537-38 (8th Cir. 2013); *Revels v. Sanders*, 519 F.3d 734, 739-40 (8th Cir. 2008).

argument, *see* Obj. to Resp. at 12, the applicable challenge is not to a state court order as to his continued commitment.[14]    *See Morgan*, 744 F.3d at 538; *Doranti*, 2020 WL 3618576, at \*2; *cf. Magwood v. Peterson*, 561 U.S. 320, 332 (2010) ("The reference to a state-court judgment in § 2254(b) is significant because the term 'application' cannot be defined in a vacuum.  A § 2254 petitioner is applying for something: His petition 'seeks *invalidation* (in whole or in part) *of the judgment* authorizing the prisoner's confinement.'" (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 83 (2005) (emphasis added))).  Benson's claims that the process for petitioning for a reduction in custody is unconstitutionally long "are collateral" to his commitment.  *Otey*, 5 F.3d at 1131.

Respectfully, a faster process would not necessarily result in a reduction in custody or discharge from MSOP for Benson.  As Commissioner Harpstead points out, even if Benson succeeded on his process-based claims for relief, it "would not invalidate his commitment, nor would it inherently reduce the length of his commitment."  Mem. in Supp. of Resp. at 9-10.  A faster process would just get Benson before the Commitment Appeal Panel sooner to make his case for a reduction in custody.  *See Otey*, 5 F.3d at 1131.  Were that process faster, the Commitment Appeal Panel "would [still] not be compelled to grant" Benson a reduction in custody.  *See id.*  As such, Benson's claims that the process for petitioning for a reduction in custody is unconstitutionally long "is not the stuff of redress which can be sought under § 2254."  *Id.*

---

[14] Whether Benson may subsequently challenge any state court order as to his *continued* commitment in a future habeas petition is not before the Court.  *See Morgan*, 744 F.3d at 538; *Doranti*, 2020 WL 3618576, at \*2; *cf. Benson v. Minnesota*, No. 09-cv-2793 (DWF/JJG), 2010 WL 1780271, at \*1-2 (D. Minn. Mar. 15, 2010) (limitations period for bringing federal habeas challenge to Benson's initial civil commitment expired in December 1994), *report and recommendation adopted*, 2010 WL 1780269 (D. Minn. Apr. 30, 2010).

Accordingly, the Court recommends that Benson's second-filed, habeas action be dismissed without prejudice for lack of subject matter jurisdiction.[15]  *See Kruger*, 77 F.3d at 1073.

## IV. MOTION TO DISMISS

Having determined that a civil action under § 1983 is the appropriate procedural vehicle for Benson to assert his claims that the process for petitioning for a reduction in custody is unconstitutionally long, the Court turns to Commissioner Harpstead's motion to dismiss in Benson's first-filed action, No. 22-cv-1601.  Commissioner Harpstead moves for dismissal of Benson's § 1983 action pursuant to Fed. R. Civ. P. 12(b)(6), asserting that his claims are precluded by the litigation *Karsjens v. Minnesota Department of Human Services*, No. 11-cv-3659 (DWF/TNL), and otherwise fail to state a claim.

### A.  Legal Standard

"Res judicata operates so that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  *Brown v. Kansas City Live, LLC*, 931 F.3d 712, 714 (8th Cir. 2019) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)); *see also, e.g.*, *Midwest Disability Initiative v. JANS Enters., Inc.*, 929 F.3d 603, 607 (8th Cir. 2019); *Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018); *Yankton Sioux Tribe v. U.S. Dep't of Health & Human Servs.*, 533 F.3d 634, 639 (8th Cir. 2008).  "Adherence to the

---

[15] As Benson has simultaneously brought a § 1983 action containing the same claims—namely, that the process for petitioning for a reduction in custody is unconstitutionally long—the Court need not consider whether Benson's habeas petition should be converted into a § 1983 action.  *Cf. Spencer*, 774 F.3d at 471.

doctrine of res judicata saves judicial energy, prevents harassment of the defendant, and promotes expeditious resolution of controversies." *Seenyur v. Coolidge*, No. 16-cv-3832 (WMW/BRT), 2017 WL 9249431, at \*3 (D. Minn. Sept. 22, 2017) (quotation omitted), *report and recommendation adopted*, 2018 WL 400758 (D. Minn. Jan. 12, 2018). "Dismissal on the basis of res judicata at the pleading stage is appropriate if the defense is apparent on the face of the complaint." *Magee v. Hamline Univ.*, 775 F.3d 1057, 1058-59 (8th Cir. 2015) (citing *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763-64 (8th Cir. 2012)); *see also Midwest Disability Initiative*, 929 F.3d at 607.

The Supreme Court has described res judicata as "a term that now comprises two distinct doctrines regarding the preclusive effect of prior litigation." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020); *accord Brownback v. King*, 141 S. Ct. 740, 747 n.3 (2021); *see also, e.g.*, *In re Finstad*, 4 F.4th 693, 696 (8th Cir. 2021) ("*Res judicata* is a broad term often used to describe the more modern terms claim preclusion and issue preclusion."). "The first is issue preclusion (sometimes called collateral estoppel), which precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Lucky Brand Dungarees*, 140 S. Ct. at 1594; *accord Brownback*, 141 S. Ct. at 747 n.3. "The second doctrine is claim preclusion (sometimes itself called res judicata)." *Lucky Brand Dungarees*, 140 S. Ct. at 1594; *accord Brownback*, 141 S. Ct. at 747 n.3.

> Unlike issue preclusion, claim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated. If a later suit advances the same claim as an earlier suit between the same parties, the earlier suit's judgment prevents litigation

16

> of all grounds for, or defenses to, recovery that were
> previously available to the parties, regardless of whether they
> were asserted or determined in the prior proceeding.

*Lucky Brand Dungarees*, 140 S. Ct. at 1594 (quotation omitted); *accord Brownback*, 141 S. Ct. at 747 n.3.

Claim preclusion "applies when '(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action.'"[16]  *Elbert*, 903 F.3d at 782 (quoting *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998)).

## B. *Karsjens* Litigation

"In *Karsjens*, a class of plaintiffs consisting of all clients who were then committed at the MSOP, . . . and who were represented by counsel, pursued numerous claims regarding the lawfulness of conditions at the MSOP."  *White v. Dayton*, Nos. 11-cv-3702, 11-cv-3714, 12-cv-62 (NEB/DJF), 2023 WL 3615247, at *3 (D. Minn. May 24, 2023); *see, e.g.*, *Karsjens v. Lourey*, 988 F.3d 1047, 1049-50 (8th Cir. 2021) [hereinafter *Karsjens III*]; *Karsjens v. Piper*, 845 F.3d 394, 398, 401-03 (8th Cir. 2017) [hereinafter *Karsjens II*], *cert. denied*, 138 S. Ct. 106 (Oct. 2, 2017); *Karsjens v. Harpstead*, No. 11-cv-3659, 2022 WL 542467, at *1-3 (D. Minn. Feb. 17, 2022) [hereinafter *Karsjens IV*], *appeal filed*, No. 22-1459 (8th Cir. Mar. 4, 2022).  "*Karsjens* was litigated for more than

---

[16] At times, the Eighth Circuit Court of Appeals has articulated these elements differently.  *Compare, e.g.*, *Midwest Disability Initiative*, 929 F.3d at 607; *Elbert*, 903 F.3d at 782; *Magee*, 775 F.3d at 1059; *Yankton Sioux Tribe*, 533 F.3d at 639, *with Al-Saadoon v. Barr*, 973 F.3d 794, 801 (8th Cir. 2020) (combining first and second elements), *with United States v. Bala*, 948 F.3d 948, 950 (8th Cir. 2020) (adding fifth element that "the party against whom *res judicata* is asserted must have had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect" (quotation omitted)).

a decade and consisted of three appeals, with the third appeal still pending." *White*, 2023 WL 36215247, at *3. Benson was a member of the class certified in *Karsjens*. *See Karsjens IV*, 2022 WL 542467, at *1 (certified class consists "of all patients currently civilly committed to the MSOP pursuant to Minn. Stat. § 253B" (quotation omitted)).

### 1. *Karsjens* Count II & *Karsjens I*

The operative pleading in *Karsjens* was the Third Amended Complaint. *See, e.g., Greene v. Benson*, No. 11-cv-979 (JRT/DJF), 2023 WL 3815422, at *1 (D. Minn. June 5, 2023); *White*, 2023 WL 3615247, at *3; *Karsjens IV*, 2022 WL 542467, at *3; *see generally Karsjens* Third Amended Compl., ECF No. 635 in No. 11-cv-3659. Among other defendants, the Third Amended Complaint brought claims against the Commissioner of the Minnesota Department of Human Services in the Commissioner's official capacity. *Karsjens* Third Amended Compl. ¶¶ 1, 16, 34. Among other claims, the *Karsjens* class alleged that the Minnesota Commitment and Treatment Act: Sexually Dangerous Persons and Sexual Psychopathic Personalities ("MCTA"), Minn. Stat. § 253D.01 *et seq.*, which includes the process for petitioning for a reduction in custody, was unconstitutional as applied. *Karsjens* Third Amended Compl. ¶¶ 234-53 ("*Karsjens* Count II"). Included among the factual allegations supporting *Karsjens* Count II were that "Defendants have not implemented a process for reduction in custody that provides Plaintiffs or Class members with the required constitutional due process"; "[a] petition for a reduction in custody can take up to, or perhaps longer than, 600 days to even be heard by the initial reviewing panel, and on average takes over 220 days for the petition to be heard"; and "[t]he average time for appeals to the [Commitment Appeal Panel] is

unknown, but inevitably delays the decision longer." *Karsjens* Third Amended Compl. ¶¶ 247-48. The *Karsjens* class alleged that "Defendants' implementation of Minn. Stat. § 253D violates Plaintiffs' and Class members' constitutional rights to due process protections" and "the application of Minn. Stat. § 253D to Plaintiffs and Class members is punitive, not therapeutic, in nature, rendering it unconstitutional." *Karsjens* Third Amended Compl. ¶ 251.

The *Karsjens* litigation proceeded in phases. *Karsjens IV*, 2022 WL 542467, at *2. *Karsjens* Count II was part of the first phase. *Id.* As part of a six-week bench trial, the *Karsjens* class submitted a written closing argument to the district court, which included proposed findings of fact and conclusions of law. *Karsjens v. Jesson*, 109 F. Supp. 3d 1139, 1170-73 (D. Minn. 2015) [hereinafter *Karsjens I*], *rev'd and remanded*, *Karsjens II*, 845 F.3d 394; *see generally Karsjens* Class Closing Argument, ECF No. 914 in No. 11-cv-3659. Among other arguments, the *Karsjens* class argued that the MCTA was unconstitutional as applied based on the "constitutional shortcomings of the reduction in custody process." *Karsjens* Class Closing Argument at 19. The *Karsjens* class argued that proceeding through the Special Review Board and Commitment Appeal Panel is a "process [that] can take years." *Karsjens* Class Closing Argument at 19. The *Karsjens* class argued that "Defendants control the [Special Review Board] in many respects," including the number, training, and appointment of members to the Special Review Board as well as "scheduling of hearings." *Karsjens* Class Closing Argument at 19. The *Karsjens* class also proposed findings of fact regarding the delays in the reduction-in-custody process. *Karsjens* Class Closing Argument at 117-23. These

proposed findings related to the overall length of time between a petition seeking a reduction in custody and a final determination on that petition; the length of time to complete proceedings before the Special Review Board; the role of the Commissioner of Human Services with respect to determining the number and selection of Special Review Board members and increasing the number of Commitment Appeal Panel panels; and the number of petitions pending at various stages in the process. *See Karsjens* Class Closing Argument at 117-23.

In *Karsjens I*, the district court found in favor of the *Karsjens* class on Count II, concluding that the MCTA was unconstitutional as applied. 109 F. Supp. at 1170-73. The district court's findings described the process for petitioning for a reduction in custody. *Id.* at 1161-63. Among the district court's findings were that "[t]he [Special Review Board] and [Commitment Appeal Panel] process is unduly lengthy and is bogged down with difficult procedures"; the "delays, in substantial part, are a result of insufficient funding and staffing"; and the Commissioner of Human Services "determines the number of [Special Review Board] members and selects the [Special Review Board] members after an application process." *Id.* at 1163. Among other things, the district court concluded that the MCTA was "unconstitutional as applied because Defendants apply the statute in a manner that results in Plaintiffs being confined to the MSOP beyond such time as they either meet the statutory reduction in custody criteria or no longer satisfy the constitutional threshold for continued commitment"; "Defendants[] fail[ed] to address impediments and delays in the reduction in custody process" and "[t]hese failures further delay Plaintiffs' ultimate discharge from the MSOP"; and "discharge procedures

20

are not working properly at the MSOP." *Id.* at 1170, 1171-72, 1174.  In a subsequent order granting certain interim relief, the district court noted that "Defendants have full control to schedule [Special Review Board] hearings and to appoint individuals to the [Special Review Board], yet Defendants have allowed lengthy delays in the [Special Review Board] process and significant backlogs to delay decisions on individual petitions for transfer, provisional release, or discharge" and "Defendants have not ensured that the discharge process is operating to confine individuals at the MSOP for only so long as the Constitution allows." *Karsjens v. Jesson*, No. 11-cv-3659, 2015 WL 6561712, at *11, 12 (D. Minn. Oct. 29, 2015) (first interim relief order), *vacated and remanded*, *Karsjens II*, 845 F.3d 394.  Among other things, the district court ordered that "Defendants must ensure that the Special Review Board and [Commitment Appeal Panel] hearings following the independent risk assessments [ordered] proceed in a timely manner and in no case conclude more than 120 days after the petition has been filed on behalf of a patient." *Id.* at *16.

### 2. *Karsjens II*

*Karsjens I* was appealed.  Arguing that the district court's ruling in *Karsjens I* should be upheld, the *Karsjens* class pointed out that the reduction-in-custody process takes years; the *Karsjens* defendants control many aspects of that process; and the *Karsjens* defendants have failed to fix the deficiencies in that process.  *See, e.g.*, Brief of Plaintiffs-Appellees at 23-26, 81-82 in *Karsjens v. Piper*, No. 15-3485 (8th Cir.) (filed Jan. 22, 2016) (Entry ID: 4358824).

The Eighth Circuit Court of Appeals reversed *Karsjens I*.  *See generally Karsjens*

*II*, 845 F.3d 394.  In doing so, the Eighth Circuit held that "[n]one of the six grounds upon which the district court determined the [*Karsjens*] defendants violated the class plaintiffs' substantive due process rights in an as-applied context satisfy the conscience-shocking standard," included among which was the district court's finding that "discharge procedures are not working properly at the MSOP."  *Id.* at 402, 410.  "Having reviewed these grounds and the record on appeal, [the Eighth Circuit] conclude[d] that the [*Karsjens*] class . . . failed to demonstrate that any of the identified actions of the [*Karsjens*] defendants or arguable shortcomings in the MSOP were egregious, malicious, or sadistic as is necessary to meet the conscience-shocking standard" and "den[ied] the claims of an as-applied due process violation," entering judgment in favor of the *Karsjens* defendants on *Karsjens* Count II.  *Id.*; *see Karsjens IV*, 2022 WL 542467, at *2 ("The Eighth Circuit reversed this Court's Phase One order and entered judgment in favor of Defendants on Counts I and II."); *see also, e.g.*, *Greene*, 2023 WL 3815422, at *1 ("On appeal, the Eighth Circuit entered judgment in favor of the defendants on Counts I and II."); *White*, 2023 WL 3615247, at *3 ("In the first *Karsjens* appeal, the Eighth Circuit entered judgment in defendants' favor on Counts I and II.").  The Supreme Court subsequently denied the petition for a writ of certiorari.  *See generally* 138 S. Ct. 106.

### C.  Res Judicata Applies

Here, the four res judicata requirements are satisfied as to Benson's claims that the process for petitioning for a reduction in custody is unconstitutionally long.

First, a determination on *Karsjens* Count II was made by the Eighth Circuit back in 2017 in *Karsjens II*.  The Supreme Court has denied review.  The current appeal relates

to the district court's determination in *Karsjens IV* regarding Counts V, VI, and VII of the Third Amended Complaint, not Count II. And, in any event, "[i]t is well established in the federal courts that the pendency of an appeal does not diminish the *res judicata* effect of a judgment rendered by a federal court." *In re Ewing*, 852 F.2d 1057, 1060 (8th Cir. 1988) (quotation omitted); *see also, e.g.*, *Greene*, 2023 WL 3815422, at *5; *White*, 2023 WL 3615247, at *8; *Magee v. Hamline Univ.*, 1 F. Supp. 3d 967, 975 n.5 (D. Minn. 2014).

"Second, there is no question that the court in *Karsjens* had proper jurisdiction over the case, which raised a myriad of federal law claims." *Greene*, 2023 WL 3815422, at *5; *see, e.g.*, *White*, 2023 WL 3615247, at *6 ("the *Karsjens* court was of competent jurisdiction"); *Bishop v. Swanson*, Nos. 12-cv-135, 12-cv-180, 12-cv-221, 12-cv-320 (KMM/DTS), 2023 WL 1786468, at *8 (D. Minn. Jan. 24, 2023) (*Karsjens* "feaures no plausible jurisdictional question"), *report and recommendation accepted*, 2023 WL 2523902 (D. Minn. Mar. 15, 2023); *see also Jamison v. Ludeman*, No. 11-cv-2136 (PAM/DTS), 2023 WL 2088302, at *2 (D. Minn. Feb. 17, 2023).

Third, as an individual civilly committed to MSOP at the time of the *Karsjens* litigation, Benson was a member of the *Karsjens* class. The *Karsjens* class sued the Commissioner of Human Services in the Commissioner's official capacity just as Benson has done so here. Commissioner Harpstead was in fact automatically substituted in for former Commissioner Emily Johnson Piper in the *Karsjens* litigation, *Karsjens IV*, 2022 WL 542467, at *1 n.1, and was theretofore in privity with the *Karsjens* defendants. *See, e.g.*, *Greene*, 2023 WL 3815422, at *5; *White*, 2023 WL 3615247, at *6; *Jamison*, 2023

23

WL 2088302, at *2.

Fourth, Benson's claims that the process for petitioning for a reduction in custody is unconstitutionally long were or could have been litigated in *Karsjens*. "[A] claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim." *Yankton Sioux Tribe*, 533 F.3d at 641 (quoting *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990)); *accord Midwest Disability Initiative*, 929 F.3d at 610; *see also Elbert*, 903 F.3d at 782 ("Whether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." (quotation omitted)). As aptly stated by Commissioner Harpstead and summarized above, the *Karsjens* class "already claimed the same nucleus of operative facts [Benson] raises now—that the reduction in custody process can takes years because [Commissioner Harpstead] allegedly fails to take steps to expand the [Special Review Board] and [Commitment Appeal Panel—violated the Fourteenth Amendment." Mem. in Supp. of Mot. to Dismiss at 10, ECF No. 15 in No. 22-cv-1601.

Benson counters that his claims "specifically address how [Commissioner Harpstead] has failed to provide the hearing within the mandated prescribed timelines of the statutes" thus raising "a Procedural Due Process claim unrelated to *Karsjens*." Obj. to Mot. to Dismiss at 2; *see also* Obj. to Mot. to Dismiss at 7 (Benson "is contesting that he is not getting the *reduction in custody process* within the mandated times prescribed in the statutes"). Benson explains that "[t]he Substantive theory claims in *Karsjens* arose out of *reduction in custody process* hearings (past tense)" whereas his "Procedural theory

24

raises out of the *reduction in custody process* hearing not occurring as prescribed (future

tense)." Obj. to Mot. to Dismiss at 5. But, as noted above,

> *claim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated.* If a later suit advances the same claim as an earlier suit between the same parties, the earlier suit's judgment prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, *regardless of whether they were asserted or determined in the prior proceeding.*

*Lucky Brand Dungarees*, 140 S. Ct. at 1594 (quotation omitted) (emphasis added);

*accord Brownback*, 141 S. Ct. at 747 n.3; *see, e.g.*, *Bala*, 948 F.3d at 950 (res judicata

precludes relitigating issues that could have been raised in prior action); *Brown*, 931 F.3d

at 714 (same); *Midwest Disability Initiative*, 929 F.3d at 607 (same); *Elbert*, 903 F.3d at

782 (same); *Magee*, 775 F.3d at 1059 (same); *see also, e.g.*, *Greene*, 2023 WL 3815422,

at *6 (applying res judicata based on *Karsjens*); *White*, 2023 WL 3615247, at *7 (same);

*Jamison*, 2023 WL 2088302, at *2 (same). Although the legal theories underlying

Benson's claims that the process for petitioning for a reduction in custody is

unconstitutionally long differ to some extent from those asserted in *Karsjens*, his claims

arise from the same nucleus of facts as those asserted in *Karsjens*. *Greene*, 2023 WL

3815422, at *7; *see Jamison*, 2023 WL 2088302, at *2 ("[I]t is clear that Jamison has

merely presented different legal claims which spring from the same set of facts as

*Karsjens*." (quotation and footnote omitted)). Accordingly, the Court concludes that

Benson's claims that the process for petitioning for a reduction in custody is

unconstitutionally long and his first-filed § 1983 civil-rights action are barred by res

judicata under the doctrine of claim preclusion.

## V. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1. Benson's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, ECF No. 1 in No. 22-cv-2017, and Case No. 22-cv-2017 be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

2. Commissioner Harpstead's Motion to Dismiss Plaintiff's Complaint, ECF No. 12 in No. 22-cv-1601, be **GRANTED**.

3. Benson's Complaint, ECF No. 1 in No. 22-cv-1061, and Case No. 22-cv-1601 be **DISMISSED WITH PREJUDICE**.

Date: June___29___, 2023

_____*s/ Tony N. Leung*_____
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Benson v. Harpstead*
Case No. 22-cv-1601 (ECT/TNL)

*Benson v. Harpstead*
Case No. 22-cv-2017 (ECT/TNL)

## <u>NOTICE</u>

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).